Opinión disidente emitida por la
Jueza Asociada Señora Pabón Charneco.
Disiento respetuosamente de la opinión mayoritaria por entender que si bien el Secretario de Educación tiene el deber ministerial de garantizar un maestro de educación física por cada escuela del sistema de educación pública y *310 nombrar maestros adicionales por cada doscientos cin-cuenta (250) estudiantes o fracción, la expedición del re-curso de mandamus solicitado no procede en consideración de los intereses públicos implicados.
I
El auto de mandamus es altamente privilegiado. Lo ex-piden los tribunales a nombre del Gobierno de Puerto Rico, y mediante él le requieren a una persona o personas natu-rales, a una corporación o a un tribunal judicial de inferior jerarquía el cumplimiento de algún acto que esté dentro de sus atribuciones o deberes. 32 L.P.R.A. see. 3421. Por lo tanto, su concesión descansa en la discreción del Tribunal.
Éste procede solamente “contra el funcionario a quien la ley le impone el deber de actuar y quien está en posición de acatarlo”, García v. Vivas, 67 D.P.R. 835, 838 (1947), a so-licitud de la parte beneficiada o interesada cuando el deber del que se exige cumplimiento es un deber ministerial y “no hay otro mecanismo en ley para conseguir ese remedio”. Acevedo Vilá v. Aponte Hernández, 168 D.P.R. 443 (2006). En otras palabras, procede “cuando ese deber no admite discreción en su ejercicio”. D. Rivé Rivera, Re-cursos Extraordinarios, 2da ed., San Juan, Programa de Educación Jurídica Continua, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1996, pág. 107.
No obstante, hemos señalado que los tribunales tienen que medir el impacto que este recurso pueda tener en los intereses públicos, evitar una posible intromisión indebida en los procedimientos del Poder Ejecutivo, o si su expedi-ción da lugar a confusión o a perjuicios de los derechos de terceros. Noriega v. Hernández Colón, 135 D.P.R. 406, 448 (1994). Por eso, hemos apuntado que “[e]l factor de mayor importancia y peso es el del posible impacto al interés público”. íd., pág. 448.
*311 Dentro del marco jurídico antes esbozado, procedemos a examinar si el Secretario de Educación tiene el deber ministerial de garantizar un maestro de educación física por cada escuela del sistema de educación pública y, particu-larmente, si éste tiene la obligación de nombrar maestros adicionales para ofrecer dicha materia por cada doscientos cincuenta (250) estudiantes o fracción.
II
La Constitución de Puerto Rico establece que
[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria. La asistencia obligatoria a las escue-las públicas primarias, hasta donde las facilidades del Estado lo permitan, según se dispone en la presente, no se interpre-tará como aplicable a aquellos que reciban instrucción prima-ria en escuelas establecidas bajo auspicios no guberna-mentales. No se utilizará propiedad ni fondos públicos para el sostenimiento de escuelas o instituciones educativas que no sean las del Estado. Nada de lo contenido en esta disposición impedirá que el Estado pueda prestar a cualquier niño servi-cios no educativos establecidos por ley para protección o bien-estar de la niñez. (Enfasis suplido.) Art. II, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 292.
El derecho a la educación está sujeto a la disponibilidad de los recursos necesarios para su realización. Asoc. Academias y Col. Cristianos v. E.L.A., 135 D.RR. 150, 169 (1994).
Por otro lado, y en consecución al mandato constitucio-nal, el Art. 1.02 de la Ley Núm. 149 de 15 de julio de 1999, según enmendada, conocida como Ley Orgánica del Depar-tamento de Educación de Puerto Rico, establece como parte de sus propósitos que el Sistema de Educación Pú- *312 blica de Puerto Rico debe ayudar a los alumnos, inter alia, a “[a]dquirir conciencia de la necesidad de desarrollo de una buena condición física, haciendo énfasis en la impor-tancia de ser saludables, tanto en su dimensión física como en la mental y espiritual”. 3 L.P.R.A. sec. 143a(c)(4). Asi-mismo, para la consecución de este propósito, requiere que se incluya “como requisito del currículo los cursos de edu-cación física”. 3 L.P.R.A. sec. 145t(c). Cabe apuntar que es para el único curso que establece, en particular, que
[l]as escuelas proveerán a todos sus estudiantes con un mí-nimo de tres (3) horas semanales de educación física. Se ga-rantizará un maestro de educación física a cada escuela. Para el caso de escuelas con más de doscientos cincuenta (250) es-tudiantes se nombrarán maestros adicionales por cada dos-cientos cincuenta (250) estudiantes o fracción. (Énfasis nuestro.) Art. 3.04 de la Ley Núm. 149, supra, 3 L.P.R.A. sec. 144c-1.
Además, el referido estatuto también establece las res-ponsabilidades, funciones, facultades y obligaciones del Se-cretario de Educación, tanto a nivel académico como administrativo. Estas incluyen, inter alia, la implantación de la política pública “con el fin de realizar los propósitos que la Constitución de Puerto Rico y las secs. 143a a 146f de este título pautan para el Sistema de Educación Pública”. 3 L.P.R.A. sec. 145s(a). Como parte de sus obliga-ciones también establecerá un currículo básico para el Sis-tema de Educación Pública que incluirá como requisito los cursos de educación física y la formulación de un plan que asigne los fondos necesarios para establecer los cursos de educación física en todas las escuelas. 3 L.P.R.A. see. 145t(c) y (w). Asimismo, deberá adoptar la fórmula para determinar el presupuesto de las escuelas, y establecerá las normas relacionadas con la administración del personal de las escuelas. 3 L.P.R.A. sec. 145u(a) y (c).
*313 III
De una lectura de la Ley Núm. 149, supra, se colige de manera meridiana el especial interés que tiene la Asam-blea Legislativa respecto al ofrecimiento de los cursos de educación física en el Sistema de Educación Pública. Tal interés se evidencia en la especificidad señalada en los pro-pósitos de la ley, la requerida inclusión de éste en el currí-culo escolar como curso primario, la disposición sobre la cantidad de maestros que deben estar disponibles para ofrecer tales cursos, así como la asignación de fondos exi-gida para lograr estos propósitos. Por lo tanto, concluimos que los deberes del Secretario de Educación respecto a los cursos de educación física no admiten discreción en su ejercicio. Estamos contestes con la determinación de la Opinión mayoritaria respecto a que el Secretario de Edu-cación tiene el deber ministerial de ofrecer dicho curso se-gún lo especifica la ley. Esto surge claramente de la dispo-sición estatutaria concernida. Abarca, además, los recursos humanos, materiales y de infraestructura para ofrecerlo.
No obstante, es nuestra responsabilidad medir el im-pacto que pueda tener en los intereses públicos el reque-rirle al Secretario de Educación nombrar todos aquellos maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción que faltan en cada escuela y, a su vez, obtener todos los demás recursos necesarios para ofre-cer los cursos. Al respecto, el Departamento de Educación señala, en su comparecencia ante nos, que ha cumplido con los requisitos mínimos de la ley al tener 2,764 profesiona-les en esta materia para un total de 1,523 escuelas en el Sistema de Educación Pública. Sin embargo, el Departa-mento de Educación arguye que añadir aproximadamente mil (1,000) maestros más conllevaría un impacto dema- *314 siado oneroso para la agenda en estos momentos.(1) No podemos hacer abstracción de esta situación.
La importancia de que nuestros estudiantes se benefi-cien de un curso cabal de educación física y el interés tan patente de la Asamblea Legislativa de que esto se logre plenamente son indudables. Aún así, ante la realidad pre-supuestaria actual del Estado, y particularmente de dicha agencia,(2) la creación de plazas adicionales y otros recur-sos que esto conlleva comporta un impacto sustancial en el presupuesto de la agencia que sobrepasa los actuales re-cursos del Estado y que puede afectar el ofrecimiento de otros servicios a la comunidad estudiantil puertorriqueña que son igualmente preeminentes. El impacto que pueda tener en los intereses públicos emitir el recurso de mandamus en el caso de autos impide que podamos avalar su expedición.
IV
Por los argumentos antes expresados, disiento respetuo-samente de la opinión mayoritaria.

 Cifras ofrecidas en el Alegato de la parte recurrida el 2 de agosto de 2006.

 El Departamento de Educación ha operado con un déficit presupuestario por los pasados años que ha afectado, inter alia, el pago de la nómina. Véase Ley Núm. 98 de 16 de mayo de 2006. Véase, además, en relación con la situación presupuesta-ria del Estado, Exposición de Motivos de la Ley Núm. 3 de 14 de enero de 2009.